LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book 2135 Page 581
1 of 8
06/18/2018 11:51 AM
BY WAYNE COLE

## NOTICE OF AGREEMENT

Notice is hereby given that on the 2nd day of October, 2017, **Bert Madera** and **Montie Carol Madera**, of the **Pitchfork Cattle Company, LLC**, (collectively the "**Company**"), whose address is 125 Bellavia Circle Drive, Ruidoso, NM, entered into a written Engagement Agreement with **Chiron Financial LLC** and **Ozark Royalty Co. LLC**, (hereinafter "**Advisors**"), for services related to the sale of some or all of the Company's real property and other assets, located in Lea County, New Mexico (the "Subject Properties").

Under the Engagement Agreement, Advisors agree to act as the exclusive investment bankers and exclusive providers of investment banking services related to the sale of some or all property belonging to the Company for an initial period of six (6) months, in return for compensation as provided for in Paragraph B of the Engagement Agreement, to include the obligation of paying the agreed upon fee for a sale of the Subject Properties which consummates within twelve (12) months of termination of the Engagement Agreement. Chiron Financial LLC contacted hundreds of persons and entities related to the sale of the Subject Properties. A copy of the executed Engagement Agreement is attached hereto as Exhibit "A."

Dated this 12th day of June, 2018.

CHIRON FINANCIAL LLC

_____
Scott W. Johnson, Managing Director

STATE OF TEXAS     )
                   ) ss.
COUNTY OF HARRIS   )

SUBSCRIBED, SWORN TO and ACKNOWLEDGED before me by Scott W. Johnson, Managing Director of **CHIRON FINANCIAL LLC**, this 12th day of June, 2018.

My Commission Expires:

_____
Notary Public



BLANCA ADRIANA DE LA GARZA
Notary ID # 130085922
My Commission Expires
January 22, 2019



EXHIBIT D

 

October 2, 2017

Pitchfork Cattle Company, LLC
125 Bellavia Circle Drive
Ruidoso, NM 88345

Attention: Bert Madera and Montie Carol Madera

Dear Mr. and Mrs. Madera:

This agreement ("Engagement Agreement") will serve as the contract between Cattle Company, LLC and its affiliates and any other owners of the Pitchfork Ranch properties and rights in Lea County, New Mexico (collectively the "Company") on the one hand, and Chiron Financial LLC ("Chiron") and Ozark Royalty Co., LLC ("Ozark", and Chiron and Ozark collectively the "Advisors") regarding the retention of the Advisors as exclusive investment bankers to the Company for the purposes outlined in this letter agreement (the "Engagement Agreement"). The Advisors' responsibilities hereunder include providing investment banking services to the Company, on an exclusive basis, focusing primarily on the sale of some or all of the Company's assets or equity (a "Sale") to a single buyer or investor, or in one or more Sales to one or multiple buyers or investors.

A. **Advisors' Role:**

1. The Advisors' role will include the following:

    - Prepare an information memorandum or other form of presentation describing the Company, its historical activity and its prospects, including existing contracts, marketing and sales, labor force, management, and financial projections or opportunities;

    - Assist the Company in compiling information related to the Sale;

    - Coordinate the execution of confidentiality agreements with potential buyers;

    - Assist the Company in coordinating one or more site visit(s) for interested buyers and work with the Company to develop any materials appropriate for such visits;

    - Advise and assist the Company in structuring the Sale and negotiating the relevant agreements;

    - Otherwise assist the Company and its other professionals, as necessary, through closing on a best efforts basis.

Fulbright Tower • 1301 McKinney, Suite 2800 • Houston, TX 77010
Phone (713) 929-9080 • Fax (713) 929-9090
www.chironfinance.com

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book 2135 Page 581
2 of 8
06/18/2018 11:51 AM
BY     WAYNE COLE

Exh. A.1

Pitchfork Cattle Company, LLC
October 2, 2017
Page 2

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book2135 Page 581
3 of 8
06/18/2018 11:51 AM
BY     WAYNE COLE

In performing the services described above, the Company will furnish or cause to be furnished to Advisor on a confidential basis such information as Advisor reasonably believes is appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information"). The Company represents to Advisors that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of Advisors' engagement hereunder, The Company will notify the Advisors immediately of the occurrence of any event or any other change known by the Company or its agents that results in the Information ceasing to be complete and correct in all material respects. The Company recognizes and confirms that Advisors: (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) do not assume responsibility for accurateness or completeness of the Information and such other Information; and (c) will not make an appraisal of any of the assets or liabilities of the Company.

The Company agrees that Advisors shall be its exclusive investment bankers in connection with any Sale undertaken with respect to the Company during the Engagement Term, as defined below, of this Engagement Agreement. The Company agrees that, during the Engagement Term, Advisors shall have the exclusive authority to initiate and conduct discussions and assist and advise the Company in its negotiations with all prospective lenders, purchasers and investors. In that regard, The Company agrees to identify to Advisors: (a) all prospective purchasers and/or investors who have been in contact with the Company (whether directly or through advisors to the Company) prior to the date hereof and (b) all prospective purchasers and/or investors who come in contact with the Company during the Engagement Term.

Advisors will consult with and advise the Company with respect to the financial aspects of any proposed Sale, including price, terms and conditions of a Sale. Advisors will not, however, have any authority to bind the Company with respect to any proposed Sale. Likewise, nothing contained herein shall require the Company to accept the terms of any proposal and the Company shall at all times have the right in his sole and absolute discretion to reject any proposed Sale regardless of the terms proposed.

B. **<u>Advisors' Compensation</u>**

As compensation for providing the foregoing services, Advisors shall receive the following:

1. <u>Monthly Retainers.</u> No initial or monthly retainers will be payable.

2. <u>Sale Fee.</u> Upon the closing of one or more Sale(s) (as defined below) with any party, Advisors shall be entitled to a fee ("Sale Fee") equal to a) 5.0% (five percent) of the aggregate Total Consideration up to $85,000,000, plus b) 10.0% (ten percent) of the aggregate Total Consideration in excess of $85,000,000 up to $120,000,000, if any, plus c) 15.0% (ten percent) of the aggregate Total Consideration in excess of $120,000,000, if any, in each case payable in cash in federal funds via wire transfers or certified checks at and as a condition of closing of such Sale(s). One half (50.0%) of each and all Sale Fees payable shall be paid to Chiron, and the other half (50.0%) shall be paid to Ozark. In the event the Advisors choose to employ the efforts of any other intermediaries in a Sale, the

Pitchfork Cattle Company, LLC
October 2, 2017
Page 3

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book 2135 Page 581
4 of 8
06/18/2018 11:51 AM
BY       WAYNE COLE

Advisors will provide for compensation of same. Nothing in this paragraph shall affect the letter of engagement for the retention of legal and negotiations services executed by and between R. Brian Coker, Ozark Royalty Co., LLC, and Bert and Montie Carol Madera, Husband and Wife, and as Managing Members of the Pitchfork Cattle Company, LLC., nor does this letter grant, convey or assign any portion of above named legal fees paid to Coker or Ozark with Chiron, which is not law firm. (See <u>Texas Rules of Professional Conduct, Section 5.04</u>).

3. <u>Out of Pocket Expenses</u>. In addition to the fees noted above, whether or not a Sale is consummated, Advisors will be entitled to reimbursement for all of Advisors' reasonable out-of-pocket expenses incurred in connection with the subject matter of this Engagement Agreement, including but not limited to travel expenses and legal costs (if any). Out of pocket expenses shall be paid on a monthly basis within thirty (30) days of the Company's receipt of an invoice reflecting such expenses.

C. **Definitions**

For the purpose of this Engagement Agreement:

"**Sale**" means and includes any sale or group of sales involving the sale or transfer, directly or indirectly, of some or all of the assets, debt, other obligations, or equity interests of the Company.

"**Total Consideration**" shall mean the purchase price paid as of the time of the effective date for the equity, assets or any portion of either, plus the assumption, dismissal, or payoff of indebtedness (secured and unsecured and including operating and capital leases) and/or payables, equipment leases (operating and capitalized), real estate leases (operating and capitalized) as well as the value of any asset left behind in the estate including cash.

D. **Term of Engagement**

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Engagement Agreement and will continue for each month thereafter unless terminated by either party upon thirty (30) days prior written notice to the other; provided, however, that either party may terminate this Engagement Agreement by written notice immediately upon the closing of a Sale. Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that: (a) termination of the Engagement Agreement shall not affect Advisors' right to indemnification under the Indemnification paragraph below; (b) the Company shall remain obligated to reimburse Advisors for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) If a Sale is consummated within twelve (12) months ("Trailer Term") of the termination of this Engagement Agreement, the Company shall remain obligated to pay a Sale Fee as calculated above. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of the Advisors' Duties, respectively) of this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

E. **Indemnification**

Pitchfork Cattle Company, LLC
October 2, 2017
Page 4

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book2135 Page 581
5 of 8
06/18/2018 11:51 AM
BY       WAYNE COLE

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F.  **Miscellaneous**

No fee payable to any other financial advisor or finder by the Company in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to Advisors hereunder. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

THE VALIDITY AND INTERPRETATION OF THIS AGREEMENT SHALL BE GOVERNED BY THE LAW OF THE STATE OF TEXAS APPLICABLE TO AGREEMENTS MADE AND TO BE FULLY PERFORMED THEREIN. IN CONNECTION WITH ANY ACTION ARISING UNDER, RELATING TO OR IN CONNECTION WITH THIS AGREEMENT, THE PARTIES SUBMIT TO THE EXCLUSIVE JURISDICTION OF THE STATE OF TEXAS AND OF THE STATE AND FEDERAL COURTS SITTING IN HARRIS COUNTY, TEXAS. MOREOVER, THE PARTIES AGREE THAT THE JUDGE OF THE COURT SHALL HAVE THE SOLE POWER TO DECIDE THE ISSUES BEFORE THE COURT WITHOUT AID OR INVOLVEMENT OF A JURY, THE PARTIES EXPRESSLY WAIVING ANY RIGHT TO A TRIAL BY JURY. In the event of any dispute arising out of this Letter Agreement, each of the parties to this Letter Agreement agrees to pay to the prevailing party, upon its request, all expenses (including reasonable attorney's fees) reasonably incurred in connection with the enforcement of this Letter Agreement.

The Company will include as a condition to closing in the documentation for any Sale that the Company has paid all fees currently due to the Advisors as of the time of closing. The Company will supply a draft of such documentation to the Advisors at least five business days prior to closing. Any amounts not paid to the Advisors when due shall accumulate interest at the rate of 10% per year, compounded monthly.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G.  **Scope of Duties**

The Company hereby acknowledges and agrees that: (a) it has retained Advisors for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) Advisors have not made any warranties or guarantees of any nature with respect to the success or satisfactory

Pitchfork Cattle Company, LLC
October 2, 2017
Page 5

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book2135 Page 581
6 of 8
06/18/2018 11:51 AM
BY      WAYNE COLE

conclusion of any Sale or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof. Both the Company and Advisors disclaim any intention to impose fiduciary duties or obligations on the other by virtue of the engagement contemplated by this Engagement Agreement and no other person or entity shall have any rights or obligations hereunder except as expressly provided herein.

H.  **Other Matters**

Advisors have the right, following a Sale closing, to place advertisements in financial and other newspapers and journals at their own expense describing its services to the Company hereunder.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), Advisors are required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Company and its senior management team as well as other information that will allow Advisors to properly identify its clients. Additionally, Chiron maintains important disclosures on its website www.chironfinance.com. These disclosures may be updated periodically on an as-needed basis. The Company agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting Chiron directly at (713) 929-9081.

I.  **Securities Platform**

Although a Sale of some or all of the assets and/or business of the Company is not expected to constitute a sale of a security, all Sales involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through Chiron Capital LLC ("Chiron Capital"), which is a Broker-Dealer registered with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). A principal of Chiron is a registered representative of Chiron Capital. Therefore, Chiron Capital is included collectively as "Chiron" with all the rights and obligations thereto under the terms of this Engagement Agreement.

To the extent a Sale Fee is payable in connection with Sale constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Sale Fee shall be specifically paid to Chiron Capital. Under no circumstance will the Company be obligated to pay a fee in an aggregate amount in excess of the amount provided in this Engagement Agreement. Payment of the fee to Chiron Capital shall constitute and be deemed payment of the fee in this Engagement Agreement.

Any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Pitchfork Cattle Company, LLC
October 2, 2017
Page 6

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book2135 Page 581
7 of 8
06/18/2018 11:51 AM
BY    WAYNE COLE

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

Sincerely, The Advisors:

**CHIRON FINANCIAL LLC**

By: _____
Scott W. Johnson
Managing Director

**OZARK ROYALTY CO., LLC**

By: _____
R. Brian Coker
Managing Member

ACCEPTED BY THE COMPANY:

**PITCHFORK CATTLE COMPANY, LLC**

By: _____   10-2-17
Bert Madera                      Date

And By: _____   10/2/17
Montie Carol Madera              Date

Exh. A-6

LEA COUNTY, NM
KEITH MANES, COUNTY CLERK
000026466
Book2135 Page 581
8 of 8
06/18/2018 11:51 AM
BY       WAYNE COLE

## ATTACHMENT A
## INDEMNIFICATION PROVISIONS

The Company agrees to indemnify, defend and hold harmless Chiron, Chiron Capital, and their affiliates, the respective partners, members, directors, officers, agents and employees of Chiron, Chiron Capital, and their affiliates and each other person, if any, controlling Chiron, Chiron Capital, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to Advisors' acting for the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with: (a) any act or omission by Advisors related to its engagement as financial Advisors under the Engagement Agreement; or (b) Advisors' acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement. The Company will reimburse the Indemnified Parties for any legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted primarily from Advisors' gross negligence or willful misconduct in the performance of its duties under said Engagement Agreement. The Company agrees that reliance by Advisors on any publicly-available information, the information supplied by the Company to Advisors in connection with said Engagement Agreement or any directions furnished by the Company shall not constitute negligence, bad faith or willful misconduct by Advisors.

In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to said Engagement Agreement but it is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, that such indemnification may not be enforced in such case, the Indemnified Parties, on the one hand, and the Company, on the other hand, shall each contribute to the amount paid or payable as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company, on the other hand, and the relative benefits to the Indemnified Parties, on the one hand, and the Company, on the other hand, arising out of the particular matter or Sale which gave rise to such loss, claim, damage, liability or costs, and all other relevant equitable considerations shall also be taken into account. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. Notwithstanding the foregoing, Advisors shall not be obligated to contribute any amount hereunder that exceeds the amount of fees previously received by Advisors hereunder.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

**RECORDER'S MEMORANDUM**
At the time of recording, this instrument was found to be partially illegible. All blackouts, creases, streaks and white-outs were present at recording.

Exh. A.7