# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

BERT MADERA, MONTIE CAROL
MADERA, and PITCHFORK CATTLE
COMPANY, LLC,

      Plaintiffs,

      v.                                        2:18-cv-0626 WJ/KRS

R. BRIAN COKER, SCOTT W.
JOHNSON, OZARK ROYALTY CO., LLC, and
CHIRON FINANCIAL, LLC,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Plaintiffs' Emergency Motion for a Temporary Restraining Order, Lien Voidance, or Lien Cancellation, filed July 9, 2018 (**Doc. 7**). Having reviewed the parties' pleadings and the applicable law, the Court finds that Plaintiffs' Motion is well-taken and, therefore, is **GRANTED IN PART**.

## BACKGROUND

This matter arises from a contract dispute as to whether Defendants are entitled to a fee for the potential sale of certain real and personal property of Pitchfork Cattle Company, LLC. Plaintiffs own a 35,000 acre cattle ranch called Pitchfork Ranch, located in Lea County, New Mexico. Plaintiffs own mostly the surface interests, and make money by entering into contracts with oil companies for surface use, services, and water.[1] Plaintiffs and Defendants entered into an Engagement Agreement related to certain services in the advertising and sale of the Pitchfork ranch properties. Defendants claimed to have contacted hundreds of entities on behalf

---

[1] Pitchfork Ranch is referred to in the pleadings as a cattle ranch so the Court assumes Plaintiffs also make money off of livestock operations on the ranch; however, the record is silent in that regard.

of the Plaintiffs.  *See* **Doc. 6-4.**  The Plaintiffs subsequently fired the Defendants after an allegedly botched sale of mineral rights.  Sometime later, Plaintiffs entered into a purchase agreement to sell their remaining property interests with the primary oil company that conducts oil and gas operations on their land.

After learning of the sale, Defendant Chiron Financial, LLC filed a "Notice of Agreement", dated June 12, 2018, and recorded said notice in the Lea County Clerk's Office on June 18, 2018.  The document was acknowledged, and signed by Scott. W. Johnson as Managing Director of Chiron Financial.  The Notice of Agreement attaches the seven page Engagement Agreement, which lists a 5% fee amount.  The Notice of Agreement provides:

> Notice is hereby given that on the 2nd day of October, 2017, **Bert Madera** and **Montie Carol Madera**, of the **Pitchfork Cattle Company, LLC**, (collectively the "**Company**"), whose address is 125 Bellavia Circle Drive, Ruidoso, NM, entered into a written Engagement Agreement with **Chiron Financial LLC** and **Ozark Royalty Co. LLC**, (hereinafter "**Advisors**"), for services related to the sale of some or all of the Company's real property and other assets, located in Lea County, New Mexico (the "Subject Properties").
>
> Under the Engagement Agreement, Advisors agree to act as the exclusive investment bankers and exclusive providers of investment banking services related to the sale of some or all property belonging to the Company for an initial period of six (6) months, in return for compensation as provided for in Paragraph B of the Engagement Agreement, to include the obligation of paying the agreed upon fee for a sale of the Subject Properties which consummates within twelve (12) months of termination of the Engagement Agreement.  Chiron Financial LLC contacted hundreds of persons and entities related to the sale of the Subject Properties.  A copy of the executed Engagement Agreement is attached hereto as Exhibit "A."

**Doc. 6-4, p. 1.**

Plaintiffs filed a complaint in the Fifth Judicial District Court, Lea County, State of New Mexico, on June 27, 2018, seeking a declaration of rights under the Engagement Agreement. **Doc. 1-1.**  This state case was removed on July 2, 2018.  **Doc. 1.**  Because Plaintiffs did not realize that Chiron Financial had recorded the Notice of Agreement, Plaintiffs filed an Amended

Complaint on July 9, 2018, asserting the following claims: Declaration that the Plaintiffs Do Not Owe Chiron or Johnson Compensation for the Sale of the Ranch (Count 1); Declaration that Plaintiffs do not owe Ozark or Coker Compensation for the Sale of the Ranch (Count 2); Slander of Title Against Chiron (Count 3); Tortious Interference with Contract against Chiron (Count 4); and Action for Voidance or Cancellation of Title Encumbrance, or for an Injunction Ordering Immediate Release Thereof (Count 5). **Doc. 6.**

At the same time, Plaintiffs filed an emergency motion for relief, seeking three alternate forms of relief: (1) Lien Voidance under NMSA § 48-1A-8; (2) Lien Cancellation under NMSA §§ 48-12-6 or 48-2-9, or (3) a preliminary injunction voiding, cancelling, or ordering the release of the Notice of Agreement. **Doc. 7.**

As part of their request for relief, Plaintiffs included affidavits discussing the Notice of Agreement. David A. Pyeatt, president and owner of Elliot & Waldron Title & Abstract Co., Inc., the title company involved in the sale, filed a declaration stating that the "Notice of Agreement seeks to notify the public, including future purchasers of the Ranch of the obligation of the Plaintiff to pay certain amounts to Defendants at closing of any sale of the Ranch." **Doc. 12-2**.

He stated in the declaration that "[t]he Defendant's Notice of Agreement is an adverse matter affecting the title to the Ranch. E&W is prohibited from ignoring or insuring over the Notice of Agreement pursuant to NMAC 13.14.18.11D without exception to the Notice of Agreement, therefore a release of the Notice of Agreement has been required." **Doc. 12-2.**[2] Mr. Pyeatt also testified that the Notice of Agreement constituted an "adverse matter", i.e., a

---

[2] Although Mr. Pyeatt testified at the hearing, the Court also refers to the declaration, as it was admitted into evidence at the hearing as Exhibit 1.

document affecting title to the properties[3], for which he could not issue title insurance, but had to issue an exception. Mr. Pyeatt stated that the sale could go through if either (1) the purchaser accepts an exception to title policy for the Notice of Agreement, or (2) a release of the Notice of Agreement is recorded. **Doc. 12-2.**

At the hearing on July 12, 2018, the Court heard argument from Plaintiffs and Defendant Chiron Financial. To comply with the requirements of the Lien Protection Efficiency Act, the Court issued an Order to Show Cause why the purported Notice of Agreement, recorded in Lea County, should not be stricken as a "nonconsensual common law lien", pursuant to NMSA § 48-1A-8, 9. *See* **Docs. 13, 20.** The Orders to Show Cause allowed Defendants to present argument on why the Notice of Agreement should not be stricken as a nonconsensual common law lien, and allowed Plaintiffs to respond.

The Court held the Order to Show Cause hearing on August 2, 2018. At the evidentiary hearing, the Court heard testimony from Mr. Pyeatt, and argument from Plaintiffs and Defendants Chiron Financial and Ozark Royalty. Because Defendant Chiron Financial threatened to sue the title company, Plaintiffs have offered (at the insistence of the title company) to deposit in the Court's registry the claimed sales fee, and included such language in a proposed order tendered to the Court.

**DISCUSSION**

**I.    Choice of Law Provision.**

Preliminarily, Defendant Chiron Financial argues that the Court must apply Texas law, based on a choice of law provision in the Engagement Agreement. However, for purposes of ruling on the Emergency Motion, the Engagement Agreement is not at issue. Instead, the Court

---

[3] Mr. Pyeatt alternatively testified that "adverse matter" means anything that is adverse to interests they are trying to insure. As the Court repeatedly stated at the hearing, the Court, and not the parties or witnesses, determines whether the Notice of Agreement constitutes a lien.

must decide the effect of, and any remedy for, the filing of the "Notice of Agreement" in the real property records of Lea County, New Mexico. Therefore, this narrow *in rem* issue must be decided according to New Mexico law.[4]

## II. Avoidance of Notice of Agreement pursuant to NMSA § 48-1A-8, 9.

Plaintiff seeks to declare the Notice of Agreement *void ab initio* as an invalid pursuant to NMSA § 48-1A-8.

### A. Defendants have no valid interest in the real properties or sales proceeds.

At its core, this case presents a simple issue. All parties agree that Defendants have no interest in, or claim to, the Pitchfork Ranch's real properties or proceeds, and at most Defendants have *in personam* contract claims against Plaintiffs.[5] Defendant Chiron Financial states that "the notice neither encumbers property as a security nor asserts that Pitchfork owes a debt." **Doc. 26.**

Despite not holding any apparent valid interest in the properties, Defendant Chiron Financial filed the "Notice of Agreement." Defendant Chiron Financial states, in theory, that its Notice of Agreement is insufficient to prevent the sale or even assert an interest in the sales proceeds. However, instead of releasing the Notice of Agreement, stipulating to these facts to effectuate closing, or agreeing to an escrow of the claimed sales fee as offered by Plaintiffs, Defendants continue to assert an amorphous, undefined interest - something that is enough to cloud title but that allegedly falls short of being a lien that can be declared void pursuant to NMSA § 48-1A-9. This strategy is intended to hold the sale hostage and force Plaintiffs to settle without adjudicating the underlying contract claims. Defendant Chiron Financial admitted as

---

[4] The Court agrees with Plaintiffs' argument that the validity and disposition of encumbrances on real property are governed by the law of the state in which the land sits. *see Restatement (First) of Conflict of Laws* §§ 225-231 (1934); *Restatement (Second) of Conflict of Laws* § 230 (1971).
[5] Defendant Chiron also did not say they filed a *lis pendens* – apparently, because they claim they have no interest in real property.

5

much at the July 12 and August 2, 2018 hearing, stating that they do not want to withdraw the Notice of Agreement, so that they can get paid without litigation.

**B.      Notice of Agreement should be voided as a nonconsensual common law lien.**

This strategy will not succeed.  To the extent Defendants have an interest in Plaintiff's real properties, it is in the nature of an invalid lien, and the Court hereby voids that interest as a "nonconsensual common law lien" pursuant to NMSA § 48-1A-8 and 9.

1.      <u>The Notice of Agreement is a lien</u>.  As the Court noted at the hearings, the Notice of Agreement functions like a lien.  The Notice was filed in the property records of Lea County, New Mexico, with Plaintiff Pitchfork as the "Grantor."  The Notice of Agreement provided that the parties entered into an Engagement Agreement "for services related to the sale of some or all of the Company's real property and other assets, located in Lea County, New Mexico (the "Subject Properties.")." **Doc. 6-4.**  It further provides that Defendants provided services related to the sale of the properties in exchange for compensation, "to include the obligation of paying the agreed upon fee for a sale of the Subject Properties." **Doc. 6-4.**

A lien is generally understood as an "encumbrance on property as security for the payment of a debt."  N.M. Stat. Ann. § 48-1A-3; *see also* **Lien, Black's Law Dictionary** (10th ed. 2014) (a lien is "[a] legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied." ).

Here, Defendant Chiron Financial filed the Notice of Agreement asserting an interest in the sale proceeds of Plaintiff's real properties to pay a debt owed by Plaintiffs, and attached the agreement which lists the amount of their fee. **Doc. 6-4, B.**  The Notice of Agreement is recorded in the real property records according to Grantor-Grantee, with Plaintiff Pitchfork as the

Grantor. Although this may not be sufficient to assert a *valid* lien, it clearly purports to encumber the property.[6]

The Court finds that Defendant Chiron Financial filed the Notice of Agreement so as to have the effect of a lien, i.e., to cloud title to the properties. Defendant Chiron Financial is sophisticated, and knew that the effect of asserting that Plaintiff owed money for the sale of the properties would cloud title to the properties and prevent a sale. Defendant Chiron filed the Notice of Agreement to hold the sale hostage, and avoid litigating the contract claims. The New Mexico legislature clearly did not intend for property records to be used for that purpose, and enacted the Lien Protection Efficiency Act to prevent such interests from clouding title. Therefore, to the extent that the Notice of Agreement acts a lien, the Court concludes that it should be declared *void ab initio*, and should be released.

That the Notice of Agreement may not be a valid lien or follow procedural mechanisms is no impediment to voiding it under this statute. Such instruments are exactly what the Lien Protection Efficiency Statute is intended to void. *See* NMSA § 48-1A-2 (in laying out purpose of statute, legislature finds that "there is a problem with the presentation for filing or recording of invalid instruments that purport to affect the real or personal property interests of persons."); *Browning v. Griffin*, 140 Idaho 598, 601, 97 P.3d 465, 468 (Id. Ct. App. 2004) ("Even an invalid lien constitutes a cloud on the title of the property owner. An unenforceable lien may deter potential buyers or lenders from purchasing the property or accepting the property as security for a loan. An unenforceable lien is not the equivalent of no lien at all, and [Plaintiff] Browning was

---

[6] Defendant Ozark Royalty did not sign the Notice of Agreement or record it, and takes no position on whether the Notice of Agreement is a lien. Ozark Royalty admits that if the Notice of Agreement was a lien, it would not be a lien claimant. Moreover, Plaintiffs did not file the lien voidance count against Ozark Royalty. **Doc. 6, p. 25.** Thus, it is unclear what interest Ozark Royalty has, if any, in this proceeding to void the Notice of Agreement as a nonconsensual common law lien.

entitled to a court order removing the invalid lien until Griffin mooted that issue by recording a release of the lien.").

Moreover, buyers and title companies would read this "Notice of Agreement" with trepidation, reasonably reading it as asserting an encumbrance on real property, because Defendants claim to have performed what appear to be broker-like activities, such as advertisement.[7] Commercial real estate brokers may file statutory liens for the amount they are owed. *See* NMSA § 48-12-1 *et seq*; *see also* Tex. Prop. Code § 62.021(a) (Under Texas law, which Defendants argue apply here, "A broker has a lien on a seller's or lessor's commercial real estate interest in the amount specified by the commission agreement…"). The Engagement Agreement attached to the Notice of Agreement provides that the Plaintiffs "will include as a condition to closing in the documentation for any sale" that the "Plaintiff has paid all fees currently due to the Advisors as of the time of closing." **Doc. 6-4, ¶ F.** A buyer would reasonably be worried that they would take the property subject to the lien, or otherwise be on the hook for having constructive notice of the claimed property interest. Although Defendants may not be brokers eligible to file a brokers' liens, or have not followed the procedural requirements of filing brokers' liens, that serves no import here. The purpose of NMSA §48-1A-1 *et seq.* is to void such invalid liens.

        2.    <u>Defendants' arguments are unavailing</u>. Defendant Chiron Financial argues that the Notice of Agreement is not a lien, asserting that it does not encumber Plaintiffs' property, or is not a security. The Court disagrees. The Notice of Agreement "purports to be a lien" because the *effect* of this document is to encumber the property, "regardless of self-description." NMSA § 48-1A-3(E). The purpose of the statute is to remove invalid documents

---

[7] Plaintiffs alternatively argued that the lien should be canceled as a commercial broker's lien pursuant to NMSA § 48-12-6. The Court does not make any determination as to whether Defendants, in fact, acted as commercial real estate brokers or violated New Mexico law in doing so. *See generally* NMSA § 61-29-2.

that encumber properties. *See* NMSA § 48-1A-2. The Court concludes that the purpose of this statute would be circumvented if inventive parties could fashion language in a document that has the effect of a lien, even if it doesn't come out and say it.

Defendant Chiron Financial also cites to *Johnston Land Co., LLC v. Sorenson*, 2018 ND 183, ¶ 12 (N.D. July 18, 2018). In that case, the recorded affidavit provided that a judgment had been obtained against the prior property owner, and that the property may be subject to future legal proceedings. Because the affidavit merely stated that the property may be pursued in a later court proceeding, the North Dakota Supreme Court stated that "the affidavit does not claim an interest in the property, does not list an amount of money and does not purport to be a lien." *Johnston Land Co., LLC v. Sorenson*, 2018 ND 183, ¶ 12]

*Johnston* is not applicable. In *Johnston*, the claimant had won a money judgment for attorney fees against a client; the client transferred real property. The attorney filed a document in the property records of the transferred property indicating the property may be pursued, essentially in a fraudulent transfer action. *Johnston Land Co., LLC v. Sorenson*, 2018 ND 183, ¶ 12. As noted above, Defendant Chiron asserts some kind of an interest in the real property or sales proceeds, akin to a commercial broker's lien.

Moreover, the filing in *Johnston* was in the nature of a *lis pendens*, i.e., a statutory lien. Chiron Financial does not claim that it asserted a *lis pendens*, and they have not complied with the requirements of asserting a *lis pendens*. *See* NMSA § 38-1-14. Had they asserted a valid *lis pendens*, it likely could not be voided under the Lien Protection Efficiency Act, as a *lis pendens* is provided by statute. *See* NMSA § 48-1A-3(E)(1).

   3. <u>Nonconsensual Common Law Lien is *void ab initio*</u>. Under New Mexico's Lien Protection Efficiency Act, "[n]onconsensual common law liens against real

9

property shall not be recognized or be enforceable" (NMSA § 48-1A-5), and the property owner may initiate an action to declare the claim of lien *void ab initio*. § 48-1A-8. A district court must hold such hearing within six to twenty-one days, and if it finds the claim of lien invalid, shall issue an order declaring the lien *void ab initio* and releasing the lien. § 48-1A-8, 9. A "nonconsensual common law lien" is defined as follows:

> E. … a document, regardless of self-description, that purports to assert a lien against the assets, real or personal, of a person that:
> (1) is not expressly provided for by a specific state or federal statute;
> (2) does not depend upon the consent of the owner of the property affected or the existence of a contract for its existence; or
> (3) is not an equitable or constructive lien imposed by a court of competent jurisdiction.

N.M. Stat. Ann. § 48-1A-3(E). The purpose of the statute is in part to address the "problem with the presentation for filing or recording of invalid instruments that purport to affect the real or personal property interest of persons…" § 48-1A-2(A)(1).

As explained above, the Notice of Agreement purports to assert a lien, because the effect of the instrument is as a lien, *regardless of self-description*. Moreover, the Notice of Agreement is a nonconsensual common law lien. The Notice of Agreement is not expressly provided for by a specific statute, was not filed with the consent of the Plaintiffs, and is not an equitable or constructive lien imposed by a court.

Chiron Financial argues that the Notice of Agreement is not a nonconsensual common law lien, because it depends on "the existence of a contract *for its existence*". NMSA § 48-1A-3(E)(2) (emphasis added) (a nonconsensual common law lien is a lien that "does not depend upon the consent of the owner of the property affected or the existence of a contract for its existence"). Chiron argues that the statute was not meant to apply to parties that are in a contractual relationship. The Court disagrees. The Court concludes that this section was meant

to create an exception for consensual liens. The language "the existence of a contract *for its existence*" clearly contemplates whether a lien was consented to or created in a contract.

Chiron Financial ignores § 48-1A-4 ("Construction"), which tracks the above definition of a nonconsensual common law lien:

> B. The Lien Protection Efficiency Act is not intended to affect a lien provided for by statute, *a consensual lien* now or hereafter recognized under common law of the state or the ability of the courts to impose equitable or constructive liens.

NMSA § 48-1A-4 (emphasis added).

Thus, it is clear that § 48-1A-3(E)(2) was meant to create an exception for consensual liens. Here, the Notice of Agreement was not created or contemplated to be created by any contract. Therefore, to the extent the Notice of Agreement is a lien, the Court declares it *void ab initio*.

    4.    <u>Lien voidance under the Lien Protection Efficiency Act is not injunctive relief</u>. Ozark Royalty argues that lien invalidation under NMSA § 48-1A-8 is really in the nature of injunctive relief, and the Court must apply heightened preliminary injunction standards under Fec. R. Civ. P. 65. However, Defendant Ozark Royalty provides no case law to support the position that the Lien Protection Efficiency Act requires application of preliminary injunction standards. The Court concludes that, sitting in diversity jurisdiction, it may declare rights under NMSA § 48-1A-9, and need not apply preliminary injunction standards. *See, e.g., Olson v. Lui*, 2012 WL 39293, at *2 n.1 (D. Haw. 2012) (federal district court applying similar state statute without using federal injunctive relief standards); *Fed. Home Loan Mortg. Corp. v. Skye Kapenaokalani Griep*, 2015 WL 7274034, at *2 (D. Haw. 2015) (same). Adding preliminary injunction standards would essentially modify the substantive state law, adding additional requirements to the statute. *Wood v. Eli Lilly & Co.,* 38 F.3d 510, 512 (10th Cir.1994) ("A federal court sitting in diversity must apply the law of the forum state…and thus must ascertain

and apply [state] law with the objective that the result obtained in the federal court should be the result that would be reached in an Oklahoma court.").

Rather, the statute is in the nature of a declaration of rights. It does not order the Defendants to do anything. *See* NMSA § 48-1A-9 ("…the district court shall issue an order declaring the lien void ab initio, releasing the lien, refunding any court docketing or filing fee to the petitioner and awarding other costs and reasonable attorney fees and damages as set forth in this section to the petitioner or any other party to the proceeding, to be paid by the lien claimant."). The statute contemplates that the order be filed by the court's clerk's office.

     5. <u>There is no prejudice to Defendants</u>. For clarification, the Court emphasizes that this holding only voids Chiron's Notice of Agreement to remove any accompanying clouds on title. Otherwise, Defendants' *in personam* contract claims against Plaintiffs remain intact and the Court makes no comment on the merits of those claims.

Additionally, Plaintiff has agreed to deposit the amount of the sales fee in the Court's registry once the sale goes through, upon apparent insistence of the title company. Chiron Financial argues they would be prejudiced because they would be forced to litigate the contract claims. Being unable to hold the sale hostage is not legitimate prejudice the Court should consider.

Defendants did not assert that recording their contract gives them any additional rights, or that declaring the Notice of Agreement void would in any way affect their contract rights. All parties in interest, including the title company and the prospective purchaser of the properties, have actual knowledge of Defendants' contract claims against Plaintiffs.

Defendants argue that the recording of their Notice of Agreement and the Agreement itself gives the world constructive notice of their claim. However, after inquiry from the Court,

Defendants could not explain how constructive notice of their contract enhances or protects their contract rights, or how voiding the notice of agreement would harm their contract rights. It is unclear why they would want to give constructive notice to the world, because they claim that they only have *in personam* contract claims.

Defendants raise constructive notice, because in reality they assert *in rem* claims, and know that recording the Notice of Agreement gives subsequent purchasers notice of their claimed property interest and thereby prevents buyers from being bona fide purchasers. *See* NMSA § 14–9–2 (providing that a recorded instrument "shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."); NMSA § 14–9–3 (unrecorded instrument shall not affect the rights or title to property of a purchaser without knowledge of the unrecorded instrument); *see also Angle v. Slayton*, 102 N.M. 521, 523, 697 P.2d 940, 942 (N.M. 1985) (subsequent purchasers charged with notice of recorded documents affecting title); *Amethyst Land Co. v. Terhune*, 326 P.3d 12, 17 (N.M. 2014). *Cf. HECI Expl. Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998) (constructive notice exists in context of real property and *in rem* proceedings, but "when the rationale for imposing constructive notice is lacking, public records have not been held to create an irrebuttable presumption of notice.").

## IV. **Alternate Requested Relief Denied as Moot**.

Because the Court grants Plaintiff relief under the Lien Protection Efficiency Act, the Court **DENIES** Plaintiffs' two alternate forms of relief as **MOOT** at this time. If this alternate relief becomes necessary at some later time, Plaintiffs may renew their claims.

## V. **Attorney Fees and Costs.**

As the prevailing petitioners, Plaintiffs are entitled to costs and reasonable attorney fees they sustained in bringing their claim for lien voidance, pursuant to the Lien Protection

Efficiency Act. *See* NMSA § 48-1A-9 (awarding petitioner costs and reasonable attorney fees, to be paid by lien claimant). Therefore, Plaintiffs may seek attorneys fees and costs by filing their request for fees and costs within 14 days of the entry of this order. Defendants may file a response in opposition within 14 days after Plaintiffs file their request.

## VI. Deposit in Court Registry.

At the hearing, Plaintiffs request permission to deposit $ 4.1 million, the amount of the alleged sales fee owed to Defendants, into the court registry. Whether Plaintiffs owe Defendants a sales fee of approximately $4.1 million is the central issue in dispute in this case. *See* Fed. R. Civ. P. 67. Therefore, the Court **GRANTS** Plaintiffs' request, and **ORDERS** that if the pending transaction for sale of the property proceeds to closing, the Plaintiffs shall make the necessary arrangements with the Clerk of Court to deposit into the registry of the Court the amount of $4.1 million.

## CONCLUSION

Therefore, the Court declares the Notice of Agreement *void ab initio* and hereby releases the Notice of Agreement pursuant to NMSA § 48-1A-8,9. The Court shall issue a separate order declaring that the Notice of Agreement is *void ab initio* and therefore released by operation of law, and directing the Plaintiffs to record a certified copy of that order in Lea County Clerk's Office. Plaintiffs' counsel shall take the necessary steps to obtain a certified copy of said order and have it recorded in the records of the Lea County Clerk.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE